**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|                              |   |                    |
|------------------------------|---|--------------------|
| **UNITED STATES OF AMERICA** | : |                    |
|                              | : | **CRIMINAL ACTION**|
|                              | : | **No. 20-cr-00045**|
| **v.**                       | : |                    |
|                              | : |                    |
| **ABDUR RAHIM ISLAM**        | : |                    |
| **SHAHIED DAWAN**            | : |                    |
| **KENYATTA JOHNSON**         | : |                    |
| **DAWN CHAVOUS**             | : |                    |
| **Defendants.**              | : |                    |

**McHUGH, J.**                                                    **March 15, 2021**

## MEMORANDUM

This is a prosecution for alleged financial crimes and political corruption, set forth in a twenty-two count Indictment.  Defendant Abdur Rahim Islam has filed a motion to dismiss multiple counts.  *See* Mot. Dismiss, ECF 51.  Only one of his arguments has merit, and to that extent the motion will be granted.  In all other respects it will be denied.

### I.      Bribery as Charged in Counts One through Seven

Mr. Islam first argues that multiple counts must be dismissed insofar as they rely on a legally incorrect theory of bribery.  *See* Mot. to Dismiss at 3.  The charges in Counts One (conspiracy to commit racketeering) and Two through Seven (honest services wire fraud) are based largely on the alleged bribery of a school board official in Wisconsin, Mr. Michael Bonds.  *See* Indictment, ECF 1.  Mr. Islam argues that because the indictment does not allege a payment, or a promise of payment, that preceded Mr. Bonds' official acts, the conduct set forth would amount to no more than a reward or gratuity, and not a bribe.

1

The Indictment alleges that Mr. Bonds engaged in several "overt acts" as a result of bribery by Mr. Islam and Mr. Dawan related to Universal Education Companies. *Id.* at 30 (incorporating "Overt Acts 1-7" from Count One at 20). First, Mr. Bonds allegedly brought a motion beneficial to Universal to a Milwaukee School Board committee on December 11, 2014, voted in support of the motion the same day, and "presided over a meeting" of the full school board where the motion was approved on December 18, 2014. *Id.* at 19-20. Then, on April 19, 2016, Mr. Bonds allegedly moved the Board for approval of favorable lease terms for Universal Companies and then voted for the lease. *Id.* at 20.

The wire transmissions forming the basis of Counts Two through Seven were allegedly sent between September 26, 2015 and April 21, 2016. *Id.* at 29. The Indictment alleges that Mr. Bonds created a false invoice to disguise a bribe allegedly paid by Defendants on December 19, 2014, although that payment is not charged under Counts Two through Seven. *Id.* at 20-21.

The Supreme Court has differentiated between gratuities and bribes, holding that only a bribe is punishable as Honest Services Fraud under 18 U.S.C. § 1346. *See United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404-05 (1999) ("[F]or bribery there must be a *quid pro quo*— a specific intent to give or receive something of value *in exchange* for an official act. An illegal gratuity, on the other hand, may constitute merely a reward for some future act that the public official will take . . . or for a past act that he has already taken."); *Skilling v. United States*, 561 U.S. 358, 410 (2010) (holding that § 1346 criminalizes only bribes and kickbacks); *United States v. Wright*, 665 F.3d 560, 567-68 (3d Cir. 2012). The defense focuses on the mismatch between the dates Bonds took action and the dates of the payments to argue that the payments alleged do not meet the definition of a bribe.

The Government responds that the order of payment and action are irrelevant, because under federal law,[1] bribery may be shown by a "stream of benefits" theory, which "does not require that each *quid*, or item of value, be linked to a specific *quo*, or official act." *Wright*, 665 F.3d at 568.   Mr. Islam's rejoinder is that a stream of benefits theory would still not resolve the deficits in the Indictment, because the stream of payments must be "intended to influence" an official act, emphasizing that some sort of payment or promise must precede the act.   Reply in Support of Mot. Dismiss at 3, ECF 65.   Here, the specific wire transmissions occurred at least nine months after the first overt acts taken by Mr. Bonds.   *See Id.* at 2-3.

Nonetheless, the Indictment alleges a series of payments between September, 2015 and April, 2016, and further alleges that "[i]n exchange for the payments and things of value, Bonds attended committee meetings of the MPS and advocated on behalf of defendants."   Indictment at 9.   The Indictment also alleges these payments preceded a separate official act of Mr. Bonds, in April 2016.   *See Id.* at 9, 21.   If the Government were relying only upon the December 2014 actions pleaded as background, Defendant's argument would carry more weight.   But the Government has alleged facts forming a cognizable theory of bribery related to the Mr. Bonds' April 2016 action.

Depending on the evidence presented, Mr. Islam may have an argument at trial based on the legal distinction between bribes and gratuities.   At this stage, however, the Government has met its burden.   *See United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012) ("Although the government . . . 'did not, at the pre-trial stage, weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendant[],' the government was not 'required to do so.'") (citing *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1971)); *United*

---

[1] Both parties agree that for Counts Two through Seven, the federal bribery statute controls, rather than either the Pennsylvania or Wisconsin bribery statutes.   *See* Gov. Resp. at 15, ECF 56 (citing *Skilling*, 561 U.S. at 411);   Islam Resp., at 2, ECF 65.

*States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011) ("[T]he Federal Rules 'were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure . . . While detailed allegations might well have been required under common-law pleadings rules . . . they surely are not contemplated by Rule 7(c)(1).'") (quoting *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007)).

Accordingly, this portion of Mr. Islam's Motion is denied.[2]

## II.    Arguments regarding Count Eight (18 U.S.C. § 1952)

Mr. Islam makes three arguments regarding Count Eight, which charges him with violating 18 U.S.C. § 1952(a)(3) (the Travel Act).  As to the portion of Count Eight related to extortion, the defense is correct, and it will be stricken.  In other respects, Count Eight stands.

### A.  Bribery as Unlawful Activity

The Travel Act prohibits the use of facilities, including an email server, with the intent to carry out certain unlawful activities, followed by performance or attempted performance of those activities, as discussed in more detail below.  As relevant here, the enumerated unlawful activities include "bribery . . . in violation of the laws of the State in which committed or of the United States." 18 U.S.C. § 1952(b)(i)(2).  Count Eight specifically charges that Mr. Islam violated the Act by using an email server with the intent to commit bribery in violation of Wisconsin Statute § 946.10 and that he thereafter committed bribery in violation of that statute.  *See* Indictment at 30.

As above, Mr. Islam argues that because the actions of the school board official preceded any payments from Mr. Islam, the government has not alleged bribery, but rather only a reward or gratuity.  *See* Mot. at 4.  The Wisconsin statute reads that whoever "transfers or promises to [a

---

[2] Mr. Islam has withdrawn his motion on these Counts regarding the "causing" language from 18 U.S.C. § 2, recognizing that the Wire Fraud statutes have their own causation language. *See* Reply at 6.

public] officer or employee or on the officer's or employees behalf any property or any personal advantage which the officer or employee is not authorized to receive" "with intent to influence the conduct of [the] public officer or public employee in relation to any matter which by law is pending or might come before the officer or employee in the officer or employee's capacity . . . or with intent to induce the officer or employee to do or omit to do any action in violation of . . . [their] lawful duty" is guilty of bribery under the statute.  Wis. Stat. § 946.10(1).  Mr. Islam argues that under the plain language of this statute, a payment or promise of payment must precede an official action.  However, as discussed above, the payments charged in Counts Two through Seven precede the official act of Mr. Bonds alleged to have taken place in April 2016. Accordingly, the Indictment alleges a cognizable bribery charge based on the plain language of the Wisconsin statute.[3]

In effect, Mr. Islam's argument challenges the legal sufficiency of the evidence, an argument that is premature at this stage.   Under the Federal Rules of Criminal Procedure, an indictment need only "be a plain, concise, and definite written statement of the essential facts charged." Fed. R. Crim. P. 7(c); *see Bergrin*, 650 F.3d at 265 ("A ruling on a motion to dismiss is not . . . a permissible vehicle for addressing the sufficiency of the government's evidence.") (quoting *United States v. DeLaurentis*, 230 F.3d 659, 660-61 (3d Cir. 2000)).   The Indictment meets that standard as to this part of Count Eight.

---

[3] The government argues that even if Mr. Islam were correct as to the definition of Wisconsin bribery, "the underlying state or federal statute prohibiting the specific category of 'unlawful activity' must be examined to determine whether that violation falls within the generic definition of crimes set forth in § 1952(b)(i)."  Gov. Resp. at 33-34, n.12 (citing *United States v. Nardello,* 393 U.S. 286, 294-95 (1969)).  I do not need to reach that question since there is no indication that the conduct alleged did not violate the Wisconsin statute.

## B. Extortion as Unlawful Activity

A separate portion of Count Eight must be dismissed.  In addition to alleging use of an email server to carry out bribery in violation of Wisconsin law, Count Eight of the Indictment charges similar use of the server to carry out extortion in violation of the Hobbs Act, 18 U.S.C. § 1951.  Extortion is defined within the statute as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).  To prove extortion under color of official right, the Government must show "that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *Evans v. United States*, 504 U.S. 255, 268 (1992).

Mr. Islam argues that, as a private citizen, he cannot be guilty of the crime of extortion within § 1951, and extortion therefore cannot serve as the predicate crime for the Travel Act charge.

The Government argues that "private individuals may be prosecuted for extortion under color of official right when they act in concert with a public official." Gov. Resp. at 32.  The cases cited by the Government fall short of supporting the broad proposition it advances.  Private individuals normally cannot be convicted for the substantive offense of § 1951 extortion aside from very limited circumstances not applicable here, such as "a private person actually masquerading as a public official." *United States v. McClain*, 934 F.2d 822, 830 (7th Cir. 1991). In that regard, the Government fails to recognize that the Third Circuit has squarely addressed this issue,  holding that extortionate conduct committed "under color of official right" must be action in an official capacity or a pretended act in an official capacity, by one asserting that he holds an

6

office when he in fact does not.  *United States v. Manzo*, 636 F.3d 56, 64 (3d Cir. 2011).  *Accord,*
*United States v. Tomblin*, 46 F.3d 1369, 1383 (5th Cir. 1995).

Presumably, the Government intended to argue that private individuals can be convicted
of § 1951 extortion as aiders and abettors through 18 U.S.C. § 2, or through conspiracy liability.
*See Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016); *Manzo*, 636 F.3d at 61, n.3 ("A private
citizen may be convicted of extortion under the Hobbs Act 'if that private citizen either conspires
with, or aids and abets, a public official in the act of extortion.'") (collecting cases).  But Mr. Islam
is not charged with conspiracy, and the Government's presumed attempt to charge him as an aider
and abettor is so convoluted that it does not put Mr. Islam on notice as is required by Third Circuit
precedent and the Federal Rules of Criminal Procedure. Count Eight ends with a reference to aiding
and abetting, but the factual recitation within the Count charges that Mr. Islam and Mr. Dawan
were "aided and abetted by Michael Bonds," not the other way around.  *See* Indictment at 30.[4]

Given that the Court cannot discern what the Government is attempting to charge,[5] Mr.
Islam has met his burden of showing the Indictment does not "sufficiently apprise[] the defendant
of what he must be prepared to meet."  *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989);
*see also United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) ("Federal Rule of Criminal
Procedure 12(b)(3)(B) allows a district court to review the sufficiency of the government's
pleadings to ensure that legally deficient charges do not go to a jury.") (internal alterations omitted)
(quoting *Bergrin*, 650 F.3d at 268); *United States v. Olatunji*, 872 F.2d 1161, 1166 (3d Cir. 1989)

---

[4] "Aiding and abetting" by Mr. Islam is otherwise alleged in multiple counts throughout the
Indictment, specifically Counts Two through Seven, Nine and Ten, and Seventeen through
Twenty-Two, lending to the Court's confusion as to Count Eight.

[5] Mr. Islam's attorney likewise noted his confusion over this charge at oral argument.  *See* Tr.
Mot. Hearing at 8-9, ECF 70 ("[S]o little is said about [Section 1951]. That . . . I actually could
not understand what charge was and it turns out I misunderstood what the prosecutors thought
they were saying because there was absolutely no information about who was involved.").

("As a further criterion of sufficiency, this Court has recognized that each count of an indictment is separate and must stand on its own.") (collecting cases); *United States v. Schramm*, 75 F.3d 156, 162 (3d Cir. 1996) ("While an indictment must generally be taken as a whole, read reasonably and given fair construction . . . *the precise manner in which an indictment is drawn cannot be ignored*.") (emphasis in original) (internal citations omitted); *United States v. Thomas*, 444 F.2d 919, 922-23 (D.C. Cir. 1971) ("Such imprecision in a grand jury indictment cannot be permitted. To do so would make it possible for the U.S. Attorney to usurp the function of the grand jury by supplying an essential element of the crime and, in many cases, would violate due process by failing to give the accused fair notice of the charge he must meet.")

Accordingly, the portion of Count Eight predicated on furthering the unlawful activity of extortion is dismissed.  Although Mr. Dawan did not join in Mr. Islam's motion, the same reasoning applies to him, and the proper course is to dismiss this portion of Count Eight as to him as well.

### C.  The Wording of Count Eight

Finally as to Count Eight, Mr. Islam argues that the Indictment uses incorrect terms in charging the offense and so the Count must be dismissed.[6]  I find that the language in question does not change the meaning of the Indictment and does not warrant dismissal.

The Travel Act criminalizes the use of any facility (including an email server) in order to carry out certain unlawful activities.  *See* 18 U.S.C. § 1952.  Mr. Islam is charged with violating section (a)(3), which criminalizes the use of a facility to "otherwise promote, manage, establish,

---

[6] Mr. Islam also made an argument that the Count must be dismissed due to the Count charging that Mr. Islam used the email server at a later date than any of the alleged unlawful activity.  In response, the Government moved to correct this clerical error, and I granted that Motion.  ECF 81.  That portion of Mr. Islam's argument is therefore now moot.

carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform" an unlawful activity.   18 U.S.C. § 1952(a)(3).   A separate subsection of the Act, (a)(2), criminalizes the use of a facility with the intent to "commit any crime of violence to further any unlawful activity."  18 U.S.C. § 1952(a)(2). In no respect is Mr. Islam being charged with committing a crime of violence; the charge against him must comport with the terms of subsection (a)(3).

Defendant's objection is that a term from subsection (a)(2) appears in the portion of Count Eight charging a violation of (a)(3).   Specifically, the Indictment charges that Mr. Islam "used a facility in interstate/ foreign commerce, namely an email server, with the intent to ***further*** an unlawful activity . . . and thereafter committed and attempted to ***commit*** the crimes of bribery and extortion to further such unlawful activity."   Indictment at 30.  Because the terms "further" and "commit" appear only in (a)(2), Mr. Islam argues that their use in charging offenses under (a)(3) renders this count of the Indictment is fatally defective. In his view, the Government was obligated to use precise terminology: "promote or facilitate" instead of "further," and "commit" instead of "perform,"

This argument elevates form over substance.  Defendant is correct that the Indictment does not quote the words of the statute.  For purposes of clarity it may have been preferable for it to be drafted that way, but it does not follow that Count Eight is therefore fatally defective.  An indictment is sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution."  *Rankin*, 870 F.2d at 112.  Concededly, by not using the literal words of the statute, the government invites an argument that is has not set forth the elements

of the offense.  But the ultimate issue is clarity, and Mr. Islam cannot credibly claim confusion stemming from the use of synonyms.  In this context, there is no meaningful difference between "furthering" unlawful activity and promoting or facilitating it.  Nor between "commit" and "perform."  Indeed, courts to have discussed the issue have found the opposite.  *See United States v. Watts,* 834 F. App'x 907, 912 (5th Cir. 2020) (holding that subsection (a)(3) is a lesser included offense of (a)(2));  *United States v. O'Hara,* 143 F. Supp. 2d 1039, 1042 (E.D. Wis. 2001) ("What distinguishes violations of §§ (a)(2) and (a)(3) is thus not the type of unlawful activity that the offender intends to promote or facilitate, but rather whether the offender intends to promote or facilitate unlawful activity by committing a crime of violence (which would violate § (a)(2)) or by some other means (which would violate § (a)(3)).").  This is supported by the plain meaning of the words.  *See* Thesaurus, Merriam-Webster, https://www.merriam-webster.com/thesaurus (last visited Mar. 10, 2021) (showing "further" and "promote" as synonyms and "perform" and "commit" as synonyms).

An Indictment should be upheld "unless it is so defective that it does not, by any reasonable construction, charge an offense."  *United States v. Willis*, 844 F.3d 155, 162 (3d Cir. 2016) (citations omitted).  That is not the case here, and the motion to dismiss based on the wording of this Count will be denied.

### III.    Counts Eleven through Sixteen

Counts Eleven through Sixteen of the Indictment charge Mr. Islam with committing wire fraud by allegedly embezzling money from Universal Companies.  Under the Wire Fraud statute, it is a crime for a person who, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses,

representations or promises" transmits a wire "for the purpose of executing such scheme or artifice." 18 U.S.C. § 1343. Mr. Islam challenges these counts on two grounds.

First, Mr. Islam argues that embezzlement is not fraud, and therefore the alleged embezzlement scheme cannot form the basis of the wire fraud violations. Because the Indictment does not allege any false or fraudulent statements made by Mr. Islam to Universal regarding this money, but merely nondisclosure, he contends that the count must be dismissed.

The Government responds that the Indictment lays out with specificity eleven overt acts through which Universal Companies were defrauded, further noting that the definition of embezzlement is "the fraudulent appropriation of property by one entrusted with its possession." Gov. Resp. at 25 (citing *Black's Law Dictionary*); Indictment at 34 (alleging eleven overt acts). In the context of the wire fraud statute, the Supreme Court has held that "[t]he concept of 'fraud' includes the act of embezzlement, which is the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another.'" *Carpenter v. United States*, 484 U.S. 19, 27 (1987); *see also United States v. Hedaithy*, 392 F.3d 580, 592 (3d Cir. 2004) (applying *Carpenter* to a wire fraud conviction). The Government has alleged the necessary elements, and although Mr. Islam anticipates disputes over the sufficiency of the evidence to prove fraud, I should not dismiss the Indictment at this initial stage. *See Moyer*, 674 F.3d at 203; *Bergrin*, 650 F.3d at 265 ("A ruling on a motion to dismiss is not . . . a permissible vehicle for addressing the sufficiency of the government's evidence.").

Second, Mr. Islam argues that the Indictment does not charge that the wire transmissions were "for the purpose of executing" the scheme, and the lack of this element warrants dismissal. But the Indictment does charge that the wires were transmitted "in furtherance of the scheme." As

11

with Count Eight, the failure to use the exact statutory language does not amount to a failure to charge an element of the case, and the account will not be dismissed on that basis.

**IV.     Conclusion**

Accordingly, Mr. Islam's Motion to Dismiss is granted as to the portion of Count Eight charging him with a violation of the Travel Act in order to commit extortion.  The remainder of his Motion is denied.  An appropriate Order follows.

<u>/s/   Gerald Austin McHugh</u>
United States District Judge