IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | CRIMINAL NO. 20-45 |
| ABDUR RAHIM ISLAM : | |
| SHAHIED DAWAN | |
| KENYATTA JOHNSON : | |
| DAWN CHAVOUS | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT ISLAM'S MOTION TO COMPEL THE PRODUCTION OF SELECT PORTIONS OF THE IRS SPECIAL AGENT'S REPORT**

The United States of America, by and through its attorneys, Jennifer A. Williams, United States Attorney for the Eastern District of Pennsylvania, and Eric L. Gibson and Mark B. Dubnoff, Assistant United States Attorneys, responds in opposition to defendant Islam's Motion to Compel the Production of Select Portions of the IRS Special Agent's Report (SAR). ECF No. 123. For the reasons set forth below, the motion should be denied.

I.     **BACKGROUND**

Defendant's motion seeks production of the SAR in discovery. While he captions his motion as a request for "Select Portions," his filing is imprecise as to what "portions" he is specifically demanding. The SAR prepared in this case – as is typical – contains sections discussing the agent's "Theory of Investigation" and the "Elements of the Offense(s)," the agent's charging recommendations, and attached exhibits supporting the agent's recommendations, which include IRS records, defendant's business records, bank records,

1

spreadsheets analyzing the records, and memoranda of witness interviews. As detailed below, the government has already produced the attached exhibits and underlying documentation.

Between 2011 and 2016, Islam devised multi-faceted schemes to disguise and underreport his true income. During those years, Islam failed to report approximately $551,202 of income on his joint personal income tax returns. This prevented the IRS from properly determining Islam's proper income tax liability for the taxable years 2011, 2012, 2013, 2014, 2015, and 2016. In Counts 17 through 22, the indictment charges Islam with aiding and assisting in the preparation of false and fraudulent tax returns, in violation of 26 U.S.C. § 7206(2). Specifically, the indictment alleges as follows:

| Count | Return Type | Tax Year | Method Filed | Date Filed | False Line Items |
|---|---|---|---|---|---|
| 17 | Form 1040, Individual Income Tax Return | 2011 | Electronically Filed | Oct. 15, 2012 | Line 22 Total Income |
| 18 | Form 1040, Individual Income Tax Return | 2012 | Paper Filed | Oct. 22, 2013 | Line 22 Total Income |
| 19 | Form 1040, Individual Income Tax Return | 2013 | Electronically Filed | Oct. 15, 2014 | Line 22 Total Income |
| 20 | Form 1040, Individual Income Tax Return | 2014 | Electronically Filed | Oct. 14, 2015 | Line 22 Total Income |
| 21 | Form 1040, Individual Income Tax Return | 2015 | Electronically Filed | Oct. 16, 2016 | Line 22 Total Income |
| 22 | Form 1040, Individual Income Tax Return | 2016 | Electronically Filed | Oct. 16, 2017 | Line 22 Total Income |

At trial, the government will produce evidence to show that Islam, a holder of dual degrees in accounting and finance from LaSalle University, who is a Pennsylvania Certified Public Accountant

(CPA) with a real estate license,[1] accomplished his deception in a variety of ways. First, the evidence will show that on multiple occasions Islam circumvented the payroll process at the non-profit Universal Community Homes (UCH) by awarding himself bonuses and pay increases outside of UCH's established payroll accounting system.[2] That is, the bonus payments were not reported by UCH as compensation on Islam's W-2 as they should have been for a salaried employee. By circumventing the payroll process and reporting the self-awarded "bonuses" as payments to a contract employee (Islam) on an IRS form 1099,[3] the defendant was then able to list the "bonus" income on Schedule C forms for a fictitious consulting business. Second, Islam sought to reduce his taxable income by improperly including false business expenses that were taken against the Gross Receipts recognized on those Schedule Cs from Islam's tax returns. The false expenses were used to offset the portion of his salary drawn from UCH and distributions from a for-profit venture,[4] thereby

---

[1] Islam's level of sophistication and education demonstrate willfulness, an element of the tax counts. General education background and experience can be evidence of willfulness. *United States v. Smith*, 890 F.2d 711 (5th Cir. 1989); *United States v. Segal*, 867 F.2d 1173 (8th Cir. 1989). Islam's educational background shows that he had to know his type of activity was criminal and evidences his knowledge of the schemes. He was not a low-level employee of UCH, but rather the President and CEO.

[2] This activity was conducted in concert with his codefendant Shahied Dawan and is detailed in the indictment in Overt Acts 23(a) through 24(d).

[3] This misuse of the IRS form 1099 also permitted Islam and Dawan to hide or obscure their "bonuses" from the UCH board and its accountant and resulted in UCH underreporting its executives' compensation to both the IRS and the Commonwealth of Pennsylvania in filings related to the non-profit status of UCH.

[4] The for-profit entity, Universal Real Estate Development Corporation (URED), is identified in ¶ 4 of the Indictment. The evidence at trial will show that this entity was described as a vehicle to develop low-income housing projects. According to it articles of incorporation, the entity's sole shareholder was UCH's founder, Person # 1. In actual operation, the entity was a partnership with the profits split between Person #1, Islam, and Dawan. Islam ultimately assumed total control of the entity and used it to disguise embezzlement from UCH and hide income from the Internal Revenue Service (IRS) that was mischaracterized as reimbursements for purported business expenses. Islam also used URED to issue two bribe payments to a Milwaukee public official in the amount of $1,500, each of which Islam later falsely characterized as "business expenses" for URED.

reducing his taxable income.[5] Worse, the "expenses" had already been reported to UCH as associated with work for the non-profit so that Islam could be reimbursed by that non-profit. In other words, Islam got UCH to pay his expenses, legitimate or otherwise (without reporting those payments as income), and then attempted to use the "expenses" yet a second time to justify a reduction in his taxable income. Finally, Islam flat out stole from UCH by disguising personal expenses within his business expense reimbursement payments from UCH. Among these personal expenses, Islam used the non-profit UCH to pay for his family's car insurance, cellular telephones, political contributions made in Islam's name, personal vacations, including travel and entertainment for Islam's paramours (including multiple trips to the Caribbean), multiple gym memberships, family dinners, and even bribe payments to a public official.[6] Additionally, the evidence will show that the accountant Islam *self-prepared* and filed federal individual income tax returns.

    The case agent from the IRS testified before the grand jury about Islam's various schemes across three appearances, and those transcripts, consisting of 62 pages, have been provided to the defense in discovery. In his testimony, the IRS special agent described the methods he used to identify Islam's fraudulent expenses and hidden income. In conducting the investigation, the case agent had the assistance and support of a revenue agent from IRS. The

---

[5] Islam's use of a Schedule C for his "consulting business" was wholly fraudulent. His Schedule C "business" had zero business activity so that any instance in which he attempted to offset his Schedule C income with "business expenses" was by definition fraudulent whether he travelled or dined out or whatever he claimed was an expense. It was improper for Islam to list any expenses on a Schedule C for a business with no activity that incurred no busines expense. The falsity related to his misuse of Schedule C accounted for approximately $384,500 in fake expenses used to offset his total income.

[6] Islam's motion appears to suggest that this scheme, hiding personal expenses or inflating business expenses in his requests to UCH for reimbursements, is all that is at issue when the bulk of Islam's tax fraud is related to the intentional deception imbedded in his Schedule Cs. *See* ECF No. 123 at 6-7.

revenue agent's calculations and reports have also been provided in discovery to the defense. With respect to the case agent's SAR, the defense has been provided with the underlying documentation and evidence referenced in the agent's work-product, including the following:

| SAR Exhibit | Description | Produced as |
| --- | --- | --- |
| W1-1 | Islam 2011 1040 | USA0602692 |
| W1-2 | Islam 2012 1040 | USA0602705 |
| W1-3 | Islam 2013 1040 | USA0602719 |
| W1-4 | Islam 2014 1040 | USA0602737 |
| W1-5 | Islam 2015 1050 | USA0602764 |
| W1-6 | Islam 2016 1050 | USA0602791 |
| W1-7 | Abdur-Rahim Islam 2011-2016 Transcripts of Account | USA0602832 - USA0602843 |
| W1-8 | Abdur-Rahim Islam 2012 IRPTRO Report | USA0602474 |
| W1-9 | Abdur-Rahim Islam 2014 IRPTRO Report | USA0602481 |
| W1-10 | Abdur-Rahim Islam 2015 IRPTRO Report | USA0602484 |
| W2-1 | W2-1, Memorandum of Interview with Abdur-Rahim Islam dated 3-27-2017 | USA0005244 |
| W2-2 | W2-2, Memorandum of Contact with Abdur-Rahim Islam dated 3-12-2018 | USA0615893 |
| W2-3 | W2-3, Abdur-Rahim Islam Background from Universal Companies' Website | USA0615894- USA0615895 |
| W3-1 | W3-1, Revenue Agent's Report for Abdur-Rahim Islam, Form 4549 Tax Years 2011 to 2014 | USA0603854 - USA0603896 |
| W3-2 | W3-2, Revenue Agent's Report for Abdur-Rahim Islam, Form 4549 Tax Years 2015 to 2016 | USA0603897 - USA0603918 |

| SAR Exhibit | Description | Produced as |
|---|---|---|
| W4-1 | W4-1, Memorandum of Interview with Kenneth Gamble dated October 12, 2017 | USA0005350 |
| W4-2 | W4-2, Memorandum of Interview with Melissa Goins dated January 29, 2018 | USA0007541 |
| W4-3 | W4-3, Memorandum of Interview with Eve Lewis dated January 23, 2018 | USA0007589 |
| W4-4 | W4-4, Memorandum of Interview with Michael Bonds dated July 11, 2018 | USA0007858 |
| W4-5 | W4-5, Subpoena Return for Abdur-Rahim Islam | USA0429805 - USA0429851 |
| W4-6 | W4-6, Evidence Log for Search Warrant at Universal Companies' Offices, Abdur-Rahim Islam's Residence, and Universal Companies' Computer Server | USA0005413 |
| W4-7 | W4-7, 2012 Expense Reimbursement Spreadsheets Seized During Search Warrant on Abdur-Rahim Islam's Residence | USA0594769 - USA0594805 |
| W4-8 | W4-8, 2013 January to June Expense Reimbursement Spreadsheets Seized During Search Warrant on Abdur-Rahim Islam's Residence | USA0594806 - USA0594823 |
| W4-9 | W4-9, 2013 July to 2014 June Expense Reimbursement Spreadsheets Seized During Search Warrant on Abdur-Rahim Islam's Residence | USA0594824 - USA0594863 |
| W4-10 | W4-10, 2014 July to 2015 June Expense Reimbursement Spreadsheets Seized During | USA0594868 - USA0594904 |

| SAR Exhibit | Description | Produced as |
|---|---|---|
| | Search Warrant on Abdur-Rahim Islam's Residence | |
| W4-11 | W4-11, 2015 July to 2016 June Expense Reimbursement Spreadsheets Seized During Search Warrant on Abdur-Rahim Islam's Residence | USA0594908 - USA0594944 |
| W4-12 | W4-12, 2016 July to 2017 June Expense Reimbursement Spreadsheets Seized During Search Warrant on Abdur-Rahim Islam's Residence | USA0594948 - USA0594985 |
| W4-13 – 18 | Photos from Islam Phone | *Produced* |
| W4-19 | W4-19, Melissa Goins Seattle Trip Hotel Bill Seized During Search Warrant on Abdur-Rahim Islam's Residence | USA0011536 |
| W4-20 | W4-20, StubHub Receipt Seized During Search Warrant on Abdur-Rahim Islam's Residence | USA0011543 |
| W4-21 | W4-21, Campaign Contribution Documents Seized During Search Warrant on Abdur-Rahim Islam's Residence | EXCHANGE-RAHIM-00311382 |
| W4-22 | W4-22, Jaimer's Floral Photo and Texts Seized from Abdur-Rahim Islam's Cell Phone | *Produced* |
| W5-1 | W5-1, Memorandum of Interview with Muhammad Islam dated November 24, 2017 | USA0005415 |
| W5-2 | W5-2, Campaign Contribution Receipts | USA0615896- USA0615898 |
| W5-3 | W5-3, Memorandum of Interview with Shahied Dawan dated February 20, 2018 | USA0007602 |
| W6-2 | W6-2, Bank Account for Universal Community Homes x9642, Checks to Abdur-Rahim | USA0591611 |

| SAR Exhibit | Description | Produced as |
|---|---|---|
|  | Islam for Bonuses and Pay Increase Differential |  |
| W6-4 | W6-4, Bank Account for Abdur-Rahim Islam x3165, Checks to Brown's Kitchen and African American Museum | USA0596135 |
| W6-6 | W6-5, Bank Account for Abdur-Rahim Islam x3165, Check to African American Books/Michael Bonds | USA0591616 |
| W7-1 | W7-1, Bank Account for Universal Real Estate Development x5367, Distribution Checks to Abdur-Rahim Islam | USA0591705 |
| W8-1 | W8-1, Subpoena Return for Abdur-Rahim Islam | USA0383658 |
| W9-1 | W9-1, Subpoena Return for Abdur-Rahim Islam | USA0385027 |
| W10-1 | W10-1, Subpoena Return for Abdur-Rahim Islam | USA0385016 |
| W11-1 - 13 | W-11 - Custodian of Records - American Express | USA0591715 - USA0594768 |

The bulk of the transactional and financial records are Islam's own, some of which he provided in response to a subpoena for records, and some of which he withheld and were obtained through the execution of federal search and seizure warrants.[7]

---

[7] The detailed affidavit of probable cause has also been provided to the defendant in discovery.

II.     ARGUMENT

Defendant Islam begins his motion by suggesting that pursuant to the IRS Manual – Part 9 – Criminal Investigation, the SAR is to "address '[a]ll defenses raised by the subject and/or their representative' as well as 'any mitigating circumstances, exculpatory evidence, or other impediments to a prosecution . . . '" ECF No. 123 at 4. He suggests that the government is somehow avoiding its *Brady* obligations by not releasing its analysis to the defense. *Id*. It is noteworthy that the defendant and his representatives met with the prosecution team pre-indictment on a single occasion on March 12, 2018. The defendant has been provided with the report of that meeting (USA0615893). As defendant Islam well knows, *neither he nor his representatives presented any defenses, exculpatory information, or mitigating factors for consideration or analysis*.

Courts around the country, including here in the Third Circuit, have held that SARs constitute work product, are therefore privileged, and only need to be revealed under exceptions to the work product doctrine. *United States v. Dark*, 597 F.2d 1097, 1099 (6th Cir. 1979) (SAR did not need to be turned over); *see also*, *United States v. All Assests Held at Bank of Julius, Bae & CO.*, 2016 U.S. Dist. LEXIS 3462 (D.C. Dist. Jan. 12, 2016). Within the Third Circuit, the Court of Appeals denied relief where a defendant requested disclosure of a SAR because that defendant failed to raise a colorable claim that exculpatory evidence was included in the SAR and not released as part of discovery. *United States v. Lynch*, 735 Fed. Appx. 780, 792 (3d Cir. 2018). Such is the case here.

Even courts that have directed the disclosure of the SAR have generally concluded that disclosure should be narrowly tailored and is only warranted when the special agent author will testify. *See United States v. Pittman*, 82 F.3d 152, 156 (7th Cir. 1996) (holding that the

9

information contained in a special agent's report which "did not relate to his testimony … did not need to be disclosed").

In the instant case, the defendant already has over 60 pages of testimony from the IRS special agent, no information in the SAR report is exculpatory, and the defendant possesses the underlying information which consists largely of Islam's own documents. There is no reason for the defense to acquire the SAR, and therefore no reason to compel the government to release the SAR in discovery.

Defendant's reliance on the Second Circuit's decision in *United States v. Sternstein*, 596 F.2d 528 (2d. Cir. 1979), is misplaced. Islam appears to be arguing that specific instances where the IRS has not accused him of faking or exaggerating his expenses should be admissible as evidence to show that he never intended to defraud the government with any of his bogus expenses. ECF No. 123 at 5. That Second Circuit decision, however, turned upon the fact that Sternstein argued that to the jury that he "had innocently entered the deductions in question based upon information supplied to him by the mistake or wrongful design *of his taxpayer clients*." *Id*. at 530 (emphasis added). Moreover, Sternstein's lawyer argued that he "had no motive to prepare fraudulent returns since his fee was fixed and not contingent upon his client obtaining a refund." *Id*.

Here, Islam, who prepared his own returns and submitted his own fraudulent expenses, has no clients to hide behind or blame for the misinformation littered throughout Islam's own tax returns. Moreover, the Second Circuit itself has stated unequivocally that *Sternstein* does not mandate production of the SAR. Rather, the Court of Appeals subsequently made clear that even in the circumstances of *Sternstein*, what the Court required was an *in camera* review of the SAR and not indiscriminate wholesale disclosure to the defense of the agent's report. *United States v.*

*Boykoff*, 67 Fed. Appx. 15, 21 (2d Cir. May 21, 2003).[8] In the instant matter, the government is happy to provide the SAR for *in camera* inspection to the Court, if directed to do so.[9]

Nor is *Sternstein* even binding in this circuit, and its ruling flies in the face of the general proposition that examples of prior good acts performed by a defendant are simply not "pertinent" to charges that the defendant on other occasions committed crimes. Whether on other occasions Islam submitted genuine legitimate business expenses is irrelevant except in so far as he on occasion exaggerated his expenses within actual business travel to pad his reimbursement claims. "[I]f specific good deeds could be introduced to disprove knowledge or intention, which are elements of most crimes, the exception of [Federal] Rule [of Evidence] 405(b) would swallow the general rule of 405(a) that proof of specific acts is not allowed." *United States v Doyle*, 130 F.3d 523, 542 (2d Cir. 1997); *see also United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008) (upholding trial court's decision in fraud case to exclude evidence of defendant's "purportedly legitimate business activities" on the ground that "evidence of good conduct is not admissible to negate criminal intent").

In short, Islam appears to be suggesting that any uncharged conduct is somehow relevant to his own state of mind in committing the tax offenses for which he has been indicted. He does not even attempt to explain how the IRS agent's theories and recommendations – the agent's

---

[8] The unpublished, non-binding opinion cited by defendant in *United States v. Lin*, No 15-cr-00065, 2018 U.S. Dist. LEXIS 68194 (N.D. Cal. April 23, 2018), appears to require no more.
[9] In his motion, defendant also relies upon *United States v. Doerr*, 886 F.2d 944, 965-966 (7th Cir. 1989), as authority that compels production of the SAR. *Doerr*, too, fails to support Islam's requested relief in this case. To the extent that the opinion can be read to stand for the unremarkable proposition that exculpatory evidence should be disclosed in discovery, the actual decision related to the SAR turned on the district court's limitations regarding the defense use of the report at trial. In that case, the agent recommended in the SAR that the tax-related investigation be terminated pre-indictment. The defense sought to introduce the agent's recommendation through the agent while he was on the stand. The district court declined, and the Court of Appeals affirmed. *Doerr* offers Islam no shelter here.

work-product – could possibly have affected Islam's state of mind when he repeatedly committed tax fraud over a period of years.

Finally, defendant's motion either mischaracterizes or misunderstands the nature of a criminal tax investigation. He alleges that "the SAR includes the IRS Agents' analysis of the hundreds or thousands of [expenses] that they deemed were not [criminally] chargeable." ECF No. 123 at 7. As he well knows from even a cursory review of the agent's grand jury testimony, the federal investigators identified an array of false information inserted by Islam into his tax returns. The investigation did not attempt to establish whether every financial transaction engaged in by Islam over a six-year period was legitimate or fraudulent, reportable or otherwise. Nor is there any requirement that they do so. Rather, the prosecution team has identified specific items that demonstrate beyond a reasonable doubt that Line 22 of Islam's personal tax returns - where he is required to record his Total Income - are false. As to whether there are additional episodes of fraud or not, neither the charging document nor the SAR make any judgment.

WHEREFORE, the government respectfully opposes defendant Islam's Motion to Compel Production of Select Portions of the IRS Special Agent's Report (SAR).

    Respectfully submitted,

    JENNIFER ARBITTIER WILLIAMS
    United States Attorney


    */s/  Eric L. Gibson*
    ERIC L. GIBSON
    MARK DUBNOFF
    Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants.

Dated: January 18, 2022          /s/ Eric L. Gibson
                                 ERIC L. GIBSON
                                 Assistant United States Attorney