# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | No. 2:20-cr-00045-01-GAM |
| ABDUR RAHIM ISLAM *et al.*, | : | (McHugh, J.) |
| Defendants. | : | |

## **[PROPOSED] ORDER**

AND NOW, this _____ day of _____, 2022, upon consideration of the Government's Motion *In Limine* for Admission of Rule 404(b) Evidence (Doc. 130), and any response in opposition, it is **ORDERED** that the Motion is **DENIED**.

BY THE COURT:

_____
Honorable Gerald Austin McHugh
U.S. District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | No. 2:20-cr-00045-01-GAM |
| ABDUR RAHIM ISLAM *et al.*, | : | (McHugh, J.) |
| Defendants. | : | |

**DEFENDANT ISLAM'S RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* FOR ADMISSION OF RULE 404(b) EVIDENCE**

Defendant Abdur Rhaim Islam opposes the government's Motion in Limine under Fed.R.Evid. 404(b). Doc. 130.

On January 29, 2021, this Court granted the motion of defendants Johnson and Chavous to sever Counts 9 and 10. Doc. 77. On October 14, 2021, the Court elaborated on and implemented that Order by scheduling a bifurcated trial. Doc. 109. Under this plan, all defendants would first be tried on Counts 9 and 10, alleging two instances of wire fraud for the purpose of executing a scheme to defraud "the citizens of Philadelphia of their right to the honest services" of Councilman Johnson, through bribery relating to the zoning of two properties. 18 U.S.C. §§ 1343, 1346. Following the jury's deliberations on those counts, the trial would resume, with defendants Islam and Dawan alone facing all remaining counts, including the typically wide-ranging RICO conspiracy charge set forth under Count One. In its recent order on the government's motion to continue the trial, the Court rejected certain alternative suggestions by some of the defendants, and instead reaffirmed the plan for a two-phase (bifurcated) trial. Doc. 148.

The government now seeks, by the device of a motion *in limine*, Doc. 130, to defeat the objectives and advantages of the Court's severance plan. The prosecutors' motion seeks pretrial approval for the admission at the first-phase trial (limited to Counts Nine and Ten) of substantial evidence of the Count One RICO conspiracy, in the nature of alleged fraud and embezzlement committed by defendants Islam and Dawan against Universal Companies.[1] The result of granting the government's motion would be a trial on Counts Nine and Ten that would take much longer to complete. (The government concedes this in its pretrial motions. *See* Doc. 132, at 2 [¶8] (estimating that the two-count Phase One trial, as they envision it, would last more than three weeks, while the RICO-based, 20-count Phase Two trial would last only "several additional days")). The government's suggestion would require limiting instructions that the Court would then have to reverse at the Second Phase trial (where the same evidence, if admitted, would be directly relevant). And it would be much less narrowly focused on those particular counts than this Court intended. In short, to grant the government's motion would be to undermine if not utterly defeat the objectives of the severance. The motion is also inconsistent with a fair and proper application of the Rules of Evidence. For all these reasons, the government's motion should therefore be denied.

The principal rationales for the severance of Counts Nine and Ten were to protect co-defendants Johnson and Chavous from unfair prejudice and from the burden and expense of sitting through a lengthy trial principally addressing matters

---

[1] In light of the government's instant motion, defendant Islam withdraws the portion of his own *in limine* motion (Doc. 124, at ECF pp. 2–4) that claims a lack of proper notice under Rule 404(b)(3).

not involving themselves. But the severance incidentally (and quite properly) also benefits defendants Islam and Dawan by ensuring that their trial on Counts Nine and Ten will also be more fair, by keeping the jury focused on the particular charges in those counts. Accordingly, Mr. Islam opposes the government's motion *in limine* and asks that this Court exercise its considerable discretion over both trial management and matters of evidence, see *United States v. Kemp*, 500 F.3d 257, 295 (3d Cir. 2007) (substantial district court discretion under Rules 403 and 404(b)); *United States v. Bethancourt*, 65 F.3d 1074, 1079 (3d Cir. 1995), by denying the motion in all respects.

The incorporation by reference into Counts Nine and Ten of substantial portions of the Count One allegations (*see* Doc. 130, at 4–7) reveals the government's theory of relevancy of that information, as reiterated in its present motion. But the definition of relevant evidence under Rules 401–402 is expansive. Evidence that is not "relevant" in that sense is not admissible at all. But not all evidence that *is* relevant is *ipso facto* to be allowed. It is thus telling that the government's motion *in limine* is framed as seeking admission of evidence "under either Rule 402 or Rule 404(b)." To claim that evidence is "admissible under Rule 402" (*see also* Doc. 130, at 15–16) is simply to say it is not inadmissible, *see* Fed.R.Evid. 402, a proposition that obviously does not get the proponent very far. The government's motion really stands or falls on this Court's application and enforcement of Evidence Rules 403 and 404(b), not Rule 402.

The government would have this Court apply Rule 404(b) in a manner that defeats the Third Circuit's landmark decision in *United States v. Green*, 617 F.3d 233, 239–49 (3d Cir. 2004). In that case, the Court rejected use of the broadly defined "*res

3

*gestae*" concept for identifying evidence that falls outside Rule 404(b)'s "other acts" category. The Court of Appeals instead held that a proper 404(b) purpose must be identified for any evidence that is not "intrinsic" to the specific charges in the indictment. For these purposes, the Court narrowly defined "intrinsic" to include *only* evidence that "directly proves" a charge in the indictment or that concerns actions that were "performed contemporaneously with the charged crime [and] facilitate[d] the commission of the charged crime." *Id*. 249. All other evidence is categorized as "extrinsic" and thus subject to analysis under Rule 404(b)'s test for "other acts."

The government seeks to have this Court declare as "intrinsic" evidence a vast swath of evidence that does not "directly" prove the charges in Counts Nine and Ten. That evidence, as their motion admits, goes principally (if not exclusively) to a convoluted theory of "motive"[2] and tangentially, at best, to "intent." Doc. 130, at 9–15. Such evidence, however, is not "intrinsic" under *Green*. The government's argument fails on the plain language of Rule 404(b)(2), which lists both "motive" and "intent" as 404(b) purposes for allowing non-intrinsic evidence, as well as under the specific holding of *Green* and its progeny. Thus, the only part of the government's motion that deserves close attention is the 404(b) discussion. Doc.130, at 17–24.[3]

---

[2] The government appears to postulate a theory that goes something like this: Universal Companies served as a "gravy train" for defendants Islam and Dawan; Universal was in financial trouble; Islam sought to save Universal by any means necessary, including bribery of public officials; therefore, any and all evidence relating to Islam's private financial benefit from his position at Universal is "evidence" of his "motive" to bribe Councilman Johnson.

[3] Of that discussion, pages 19–24 of the motion concern evidence admissible, if at all, only against Councilman Johnson and Ms. Chavous. Mr. Islam therefore leaves it to those defendants to address those points, other than to say that if allowed against his co-defendants notwithstanding Rule 403, the "Eagles luxury box" evidence would have to be

4

On page 11 of their motion, the government quotes and endorses the Third Circuit Model Jury instruction that states, in part, "Motive is not an element of the offense with which the defendant is charged. Proof of bad motive is not required to convict."  Six pages later, the same motion says that the prosecutors seek to admit extrinsic evidence "of the fraud committed by Islam and Dawan" (Point B title) "to prove the motive and intent of Islam and Dawan, which are essential elements of the honest services mail fraud charges." Doc. 130, at 17. It is the first of these contradictory statements that is correct, not the second.  The evidence that the government wants to offer against Mr. Islam – described in detail at pages 11–15 of its motion – is all of the government's Count One "evidence of Islam's relationship with Dawan and their ongoing criminality at the Universal Companies related to enriching themselves," *id*. at 11, that is, alleged misapplication of funds between different arms of the Universal Companies, plus payment of excessive, non-existent or purely personal expenses, advances, and *per diems* from corporate funds.[4] This evidence is plainly extrinsic, and thus subject to Rule 404(b) analysis, and then admissible only if it survives Rule 403 scrutiny.

Rule 404(b) is a rule of general exclusion. It thus reverses the general presumption of admissibility. See *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017); *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014). Where the evidence is not "intrinsic," the government must satisfy a strict four-part test in its

---

accompanied by a strong limiting instruction under Rule 105 noting its total irrelevance to any issue concerning the guilt or innocence of defendant Islam (or Dawan).

[4] This evidence constitutes basically the entirety of the government's second-phase case, but for the Milwaukee bribery story and the technical tax evidence.

5

404(b), as set forth in *Caldwell*, 760 F.3d at 276–77, explaining *United States v. Sampson*, 980 F.2d 883 (3d Cir. 1992). First, the proponent of the evidence must identify a proper, "non-propensity purpose that is 'at issue' in the case." 760 F.3d at 276. Second, and separately, the proponent must "explain how the evidence is relevant to that purpose… The task is not merely 'to find a pigeonhole in which the proof might fit,' but to actually demonstrate that the evidence 'prove[s] something other than propensity.'" *Id.* (internal references omitted). In satisfying the second requirement, "the government must explain how it fits into a chain of inferences - a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference." *Id.* 276–77 (earlier sources of quotation omitted).

If the proffer satisfies these criteria, the Court must still exclude the evidence unless it is "(3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested." *Id.* 277–78.

The government's motion does not follow these steps, nor does it satisfy the Third Circuit's Rule 404(b) test in any event. Vague invocations of "the relationship of the parties" and "background" or "completing the story" do not ordinarily satisfy the Rule 404(b) criteria, as most recently elaborated by the Circuit. *Cf.* Doc. 130, at 18–19 (citing pre-*Green*, pre-*Caldwell* cases). The "relationship" of Islam and Dawan will not be a controversial question at trial, given their longstanding working relationship as fellow executives at Universal. "Motive" will likewise not be "at issue" (within the meaning of *Caldwell*'s step 1) at the trial on Counts Nine and Ten. It is undisputed that the official actions that these counts accuse Councilman Johnson of taking were of significant benefit to Universal, giving the Companies and their

officers a strong and evident – but by no means necessarily corrupt – motive to have the City act favorably on the zoning and reversion issues.

It is very much disputed, of course, that Johnson acted "corruptly" or that the engagement of Ms. Chavous to provide professional services to Universal was really a disguised bribe of her husband. But *motive* is not "at issue" in this case, much less a convoluted and indirect theory of motive such as the government seeks to present. That theory, which focuses on alleged embezzlement at Universal, is a perfect example of the kind of evidence that fails the second *Caldwell* step, because the "chain of inferences" on which the government relies focuses on Mr. Islam's pattern of alleged greed and dishonesty (allegedly knowingly facilitated by Dawan) and is thus not free of reliance on a suggested propensity to commit fraud. While intent will certainly be at issue at trial (especially the alleged *mens rea* of acting "corruptly" and with "intent to defraud the citizens of Philadelphia"), the proffered extrinsic evidence goes to the question of intent (an intent to *defraud* Universal Companies, in the 404(b) conduct, not an intent to *aid* Universal by defrauding Philadelphia's citizenry) insofar as intent to prove motive, and on that score it falls short on both the first and second prongs of the *Caldwell* test.

Given the weak showing that the government makes on the first two prongs of the test, which go to "probative value," the Court should also hold under Rule 403 that the proffered extrinsic evidence of alleged fraud and embezzlement at Universal would be substantially more unfairly prejudicial at the separate trial of Counts Nine and Ten than it would be probative of those counts. The proposed extrinsic evidence

7

would also be substantially more confusing than probative[5] and any benefit would be substantially outweighed by the resulting waste of time.[6] *See* Fed.R.Evid. 403. The government's proposed 404(b) evidence reeks of an effort to prove bad character, and in particular dishonesty, and thus to prejudice the jury unfairly against Mr. Islam on these specific "honest services" charges that he engaged in bribery of a City Councilman for his own and/or his employer's benefit.

For these reasons, defendant Islam prays that this Court deny the government's motion *in limine* seeking to admit at the first phase trial the bulk of the evidence it intends to use to prove the RICO and tax charges at the second part of the trial.

Respectfully submitted,

 *s/ David Laigaie*
ECKERT SEAMANS CHERIN & MELLOTT
David M. Laigaie, Esquire
(I.D. No.: 63010)
Joshua D. Hill, Esquire
(I.D. No.: 93772)
50 S. 16th Street, 22nd Floor
Philadelphia, PA  19102
(215) 851-8400 (Telephone)
(215) 851-8383 (Telecopy)
DLaigaie@eckertseamans.com
*Attorneys for Defendant Rahim Islam*

---

[5] In the government's 404(b) story, Universal is the defendants' victim; in the charges under Counts Nine and Ten it is their co-perpetrator and beneficiary.

[6] As noted earlier, granting the government's present motion – as the government admits – would turn the severed, two-count phase of the trial into the tail that wags the twenty-count dog, to the tune of many weeks.

                        */s/Peter Goldberger*
Peter Goldberger, Esquire
(I.D. No. 22364)
50 Rittenhouse Place
Ardmore, PA 19003
(610) 649-8200 (Telephone)
(610) 649-8362 (Telecopy)
peter.goldberger@verizon.net

*Co-Counsel for Defendant Rahim Islam*

9

## CERTIFICATE OF SERVICE

    I, Joshua Hill, hereby certify that on this day, I caused the foregoing to be filed electronically with the Case Management/Electronic Case Filing System ("CM/ECF") for the Federal Judiciary. Notice of this filing will be sent to all parties by operation of the Notice of Electronic Filing system, and the parties to this action may access this filing through CM/ECF.

Dated: January 18, 2022　　　　　　　　　　　*/s/ Joshua Hill*
　　　　　　　　　　　　　　　　　　　　　　Joshua Hill