**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 20-45** |
| **ABDUR RAHIM ISLAM** | : | |
| **SHAHIED DAWAN** | | |
| **KENYATTA JOHNSON** | : | |
| **DAWN CHAVOUS** | | |

**GOVERNMENT'S CONSOLIDATED RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTIONS REGARDING THE ADMISSIBILITY OF STATEMENTS
BY ABDUR RAHIM ISLAM AND SHAHIED DAWAN**

The United States of America, by and through its attorneys, Jennifer Arbittier Williams, United States Attorney for the Eastern District of Pennsylvania, Eric L. Gibson and Mark B. Dubnoff, Assistant United States Attorneys, responds in opposition to defendants' motions regarding the admissibility of statements made by defendants Abdur Rahim Islam and Shahied Dawan. Specifically, co-defendants Kenyatta Johnson and Dawn Chavous object to the evidence in its entirety, ECF No. 207, while defendant Islam argues that additional self-serving portions of his statement to law enforcement should be admitted. ECF No. 209. None of the defendants' arguments entitle them to relief and their respective motions should be denied.

I.     <u>ARGUMENT</u>

A.     **Defendants Johnson and Chavous Are Not Entitled to Bar Statements by Co-defendants Islam and Dawan.**

The factual background is recounted in the government's trial brief. ECF No. 206, 6-24. The government attached to its trial brief the law enforcement report of Islam's interview with federal agents and Dawan's grand jury transcript. *Id.* at Ex. 1, 2. We also attach here Dawan's

1

initial interview with federal agents dated March 27, 2017 and his proffer interview and the terms under which the proffer took place on February 20, 2018.  *See* Exhs. A, B. C.

There is no dispute that the statements at issue are "testimonial" within the meaning of *Crawford v. Washington*, 541 U.S. 36 (2004).  However, the protests of Johnson and Chavous notwithstanding, *Crawford* is no bar to the admission of these statements against the declarants themselves.  Defendants Johnson and Chavous object to the introduction of any statements by Islam or Dawan because, in their view, "the government seeks to use [the statements] against Ms. Chavous and Councilmember Johnson, too."  ECF No. 207 at 1.  This is incorrect.  The government specifically relies upon Fed. R. Evid. 801(d)(2)(A), offering these as statements of a party opponent.  ECF 206 at 40. The government seeks to admit Islam's admissions against Islam, and Dawan's admissions against Dawan in reliance upon Rule 801(d)(2)(A).  Statements admitted under Rule 801(d)(2)(A) "need neither be incriminating, inculpatory, against interest, nor otherwise inherently damaging to the declarant's case.  Rule 801(d)(2)(A) simply admits those statements made by one party, but offered as evidence by the opposing party." *United States v. Reed*, 227 F.3d 763, 770 (7th Cir. 2000).  Here, the references by Islam and Dawan to their codefendants are not even facially incriminating as to Johnson or Chavous.  They are, however, evidence of knowledge, state of mind, and intent of the individual declarants - that is, Islam or Dawan.  The statements are therefore admissible in their entirety.  The jury should be instructed that the admissions are to be considered only against the declarants.  *See* 3rd Circuit Model Criminal Jury Instructions, No. 2.12.  A jury is presumed to follow its instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

These statements are clearly relevant to prove the elements of honest services fraud. In order to establish the guilt of Islam and Dawan, the government needs to prove that that they

provided things of value to defendant Johnson intending Johnson to take favorable official action that he might not otherwise take. *United States v. Wright*, 665 F.3d 560, 568 (3d Cir. 2012).  This is a wholly separate determination from the intent of the alleged bribe recipients, Johnson and Chavous.  For defendant Johnson, the government must prove that he accepted the things of value or directed a payment or a thing of value to any other person; knowing that defendants Islam and/or Dawan intended to influence him in taking official acts, whether he would take the same actions or not.  *Id*.  For defendant Chavous, the government must prove that she accepted the things of value – namely, the payments Universal made to Chavous Consulting in 2013 and 2014 – knowing that defendants Islam and/or Dawan made those payments intending to influence her husband, defendant Johnson, in in taking official acts, whether he would take the same action or not.  *See  Id*.  It is for the jury to determine the individual *mens rea* of each defendant.  Neither Chavous nor Johnson are  precluded from arguing that whatever the intentions of Islam and Dawan, the councilman and his spouse were not corrupted.

Despite being provided specificity regarding the government's intentions, *see* ECF No. 206 at 39-40, 41 n. 4, defendants' letter brief fails to identify with any detail the portion or portions to which they object.  Instead, without any factual analysis, they insist all of the admissions in their entirety must be precluded.  ECF No. 207 at 1.  In point of fact, the vast majority of the excerpts identified by the government in Dawan's grand jury transcript make no reference whatsoever to any of his codefendants.  Rather, Dawan explained the organization of Universal Companies and his role there as chief financial officer.  He described his familiarity with the Royal Theater, its zoning issues, and its eventual sale.  Dawan also described the process available for obtaining a zoning variance.  He discussed his familiarity with the lots at 13th and Bainbridge.  There is no legal basis for any of his co-defendants to object to any of these

admissions, and certainly no basis for characterizing them as some sort of Confrontation Clause violation.

To the extent Dawan discussed his co-defendant Islam, he described Islam's uncontested role at Universal as its CEO, and Islam's documented compensation.  None of these details are facially incriminating, much less a confession of wrongdoing by Dawan implicating his associates.  Similarly, Dawan testified to the grand jury about the uncontested facts that defendant Johnson was his city councilman, the Royal Theater was in Johnson's district, and Chavous had a contract with Universal.

**B.      False Exculpatory Statements by Islam and Dawan Are Not Hearsay and Are Relevant to their Consciousness of Guilt.**

"It is well settled that untrue exculpatory statements may be considered as circumstantial evidence of the defendant's consciousness of guilt*." United States v. Rajewski*, 526 F.2d 149, 158 (7th Cir. 1975).  The purpose of the evidence is to demonstrate the declarant's state of mind at the time he made the false exculpatory statement.  *Id*.  In an effort to mislead federal agents during the investigation that preceded this indictment, both Islam and Dawan made a number of untrue statements.  None of the excerpts are facially incriminating as to their co-defendants.  Those excerpts clearly are not offered for their truth and have a non-hearsay purpose.  The lies put forward by Islam and Dawan establish individually the consciousness of guilt of the declarants.  *See United States v. Kemp*, 500 F.3d 257, 298 (3d Cir. 2007); *United States v. Levy*, 865 F.2d 551, 558 (3d Cir. 1989)

On March 27, 2017, in Dawan's initial interview with federal agents, he claimed that he did not recall zoning even being an issue with the Royal Theater.  Dawan then suggested vaguely that he was aware that the zoning was somehow changed.  He claimed ignorance of the specifics

of the zoning change.  The government will introduce email traffic that shows otherwise.[1]

Dawan also told agents that he could not recall what Chavous did for Universal while she was

contracted with the company, although he later gave the grand jury a description of her "public

relations" work.  Although Dawan suggested to the grand jury that he was unsure whether he

was aware of Chavous' marital status during her contract with Universal, he told the agents

before his grand jury appearance that he had not seen her since she was pregnant.  Her pregnancy

was during her association with Universal.[2]

In the relevant excerpts of Islam's initial interview with federal agents, Islam also made a

number of false exculpatory statements.  First, Islam suggested uncertainty as to whether

Johnson and Chavous were married while she was under contract with Universal.  Islam himself

attended their wedding in December of 2011.  Islam also claimed that the idea to hire Chavous

came to him on a trip abroad to Israel when he travelled with Johnson, Chavous, and others.

Islam repeated twice during the interview that the idea to hire Chavous originated in his mind

during the trip to Israel.  This is also demonstrably false.  Islam and Dawan signed a contract

with Chavous in May of 2013.  The trip to Israel took place months later, in July of 2013, *after*

Chavous had already been "working" for Universal for over two months.  Islam told the agents

that he was generally aware of how zoning changes are made, but professed ignorance about the

details.  In truth, Dawan emailed Islam with the draft zoning ordinance for the Royal Theater in

advance of Islam's meeting with Johnson to discuss it.

False exculpatory statements may be introduced against the declarant "as evidence of the

defendant's consciousness of guilt of the underlying charges, even where such conduct may itself

---

[1] Moreover, in Dawan's proffer interview, he admitted that he was aware of meetings involving Islam, Johnson, and Dranoff about zoning for the Royal Theater.  *See* Ex. C attached
[2] Still later, in the attached proffer interview dated February 20, 2018, Dawan admitted that he was aware Johnson and Chavous were married.  *See* Ex. C attached.

violate the law." *United States v. Berrios*, 676 F.3d 118, 130 (3d Cir. 2012) (citations omitted).
Here, where the false exculpatory statements of Islam and Dawan relate directly to the charged
offenses, their statements are admissible against the declarants because they fall "squarely within
the kind of conduct traditionally demonstrating consciousness of guilt." *Id*. at 131.

C.     **Defendant Islam's Self-Serving Portions of His Own Statements Are
        Inadmissible Hearsay.**

Next, at the other end of the spectrum, defendant Islam seeks to put before the jury self-
serving hearsay in support of his defense.  In his motion, Islam cites to the government's trial
brief and *United States v. Hoffecker*, 530 F.3d 137, 192 (3d Cir. 2008) for the proposition that
"additional portions of a recording may be played 'if it is necessary to (1) explain the admitted
portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4)
insure a fair and impartial understanding.'"  He ignores entirely *Hoffecker's* admonition that the
law "does not require introduction of portions of a statement that are neither explanatory of nor
relevant to the passages that have been admitted."  530 F.3d at 192; *United States v. Soures*, 736
F.2d 87, 91 (3d Cir.1984).  Nor does he articulate how he intends to satisfy his burden of proving
that these additional excerpts he seeks to admit would satisfy the Third Circuit's four-part test.

Instead, he proffers a wish list of self-serving statements "for completeness."  ECF No.
209-1 at 2.  There is no analysis or explanation of how the additional excerpts are explanatory or
relevant.  He articulates no complaint about the context of the government's proffer, does not
suggest that the government's selections are somehow misleading, and fails to make even a
meaningful suggestion as to how his proposed additions are necessary to "a fair and impartial
understanding."  In short, Islam ignores the applicable law and his burden entirely.  A defendant
is simply not permitted to provide the jury with an entire self-serving series of statements in
order to do "an end run around the adversarial process by, in effect, testifying without swearing

an oath, facing cross examination, or being subjected to first-hand scrutiny by the jury." *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005).

Islam is not entitled to elicit or admit his own prior statements, because they are hearsay; if offered by the defendants, they are not admissions of a party opponent.  The defendant cannot present any exculpatory statements he made by questioning witnesses called by the government on cross-examination, or by any means other than through their own testimony.  *See United States v. Kapp*, 781 F.2d 1008 (3d Cir. 1986) (affirming district court's ruling that tape recording of a conversation between a codefendant and government informant that defendant considered exculpatory on the issue of his knowledge of illegality was inadmissible because it was not offered "against a party" as required by Rule 801(d)(2)).

This principle applies to witness testimony that contains statements of the defendant; even if only a portion of the statement is presented by the government, the defendants may not present their statements that were not introduced unless they testify.  *See United States v. Lentz*, 524 F.3d 501, 526 (4th Cir. 2008) ("Rule 106 does not ... render admissible the evidence which is otherwise inadmissible under the hearsay rules, [n]or does it require the admission of self serving, exculpatory statements made by a party which are being sought for admission by that same party") (internal quotations and citations omitted); *United States v. Mitchell*, 502 F.3d 931, 964 (9th Cir. 2007) (defendant was properly precluded from eliciting, on cross-examination of government agents, exculpatory statements that he had made during interviews with agents, since those statements were inadmissible hearsay); *United States v. Rivera*, 61 F.3d 131, 136 (2d Cir. 1995) ("Rule 106 does not render admissible evidence that is otherwise inadmissible"); *United States v. Mahaffy*, 2007 WL 1094153, at *2 (E.D.N.Y. Apr. 10, 2007) ("A court may ... exclude

any portion that consists largely of a defendant's own self-serving statements, which, as offered by him, are inadmissible hearsay") (internal quotations omitted).

Similarly, in *United States v. Ortega*, 203 F.3d 675 (9th Cir. 2000), the court affirmed the district court's decision precluding the defendant from eliciting his own exculpatory statements on cross-examination of a law enforcement officer, holding that the defendant's statements were inadmissible hearsay. *Id*. at 682. The court recognized that any other ruling would have allowed the defendant to put his own statements before the jury without having to take the stand himself – the precise situation the hearsay rule forbids. *Id*. at 682. In reaching its decision, the *Ortega* court distinguished the defendant's attempt to elicit his own exculpatory statements from the government's use of the defendant's inculpatory statements, noting that only the latter constitute "admissions by a party opponent and . . . therefore not hearsay," and noted that the Rule of Completeness did not apply. *Id*. at 681-682.

That an omitted portion of a conversation merely deals with the same subject matter as a published portion is not enough. In *Hoffecker*, the Court rejected a Rule 106 claim where the defendant sought to admit his statements from one conversation in order to explain his statements during another conversation, where the prior statements were not necessary to avoid misleading the jury or to ensure a fair and impartial understanding. 530 F.3d at 192. If Islam seeks to introduce any of his prior statements under Rule 106, the defendants must specify the particular passages that they believe are necessary for purposes of Rule 106 completeness and, for each passage, set forth why the admission of the prior statements are necessary to avoid misleading the jury or to ensure a fair and impartial understanding. *United States v. Price*, 516 F.3d 597, 604-05 (7th Cir. 2008) (As the party seeking to admit the additional evidence, [the defendant]

8

must establish both that the evidence is relevant to the issues in the case and that it clarifies or explains the portion offered by the Government).

II.    **CONCLUSION**

WHEREFORE, for these reasons, the government respectfully submits that defendants' motions  regarding the admissibility of certain admissions made by defendants Abdur Rahim Islam and Shahied Dawan should be denied.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney

a

*/s  Eric L. Gibson*
ERIC L. GIBSON
MARK DUBNOFF
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon the

following counsel of record electronically and via ECF.

David M. Laigaie
Joshua David Hill
Jessica Southwick
Eckert Seamans Cherin & Mellott LLC
Two Liberty Pl
50 South 16th St 22nd Fl
Philadelphia, PA 19102
Counsel for Abdur Rahim Islam

Thomas O. Fitzpatrick
Mincey Fitzpatrick Ross, LLC
1650 Market Street
36th Floor
Philadelphia, Pa 19102
Counsel for Shahied Dawan

Patrick J. Egan
Nathan Huddell
Stephanie Ohnona
Fox Rothschild LLP
2000 Market Street 20th Floor
Philadelphia, PA 19103
Counsel for Kenyatta Johnson

Barry Gross
Elizabeth Casey
Faegre Drinker Biddle & Reath LLP
One Logan Square
Ste 2000
Philadelphia, PA 19103
Counsel for Dawn Chavous

*/s Eric L. Gibson*
ERIC L. GIBSON
Assistant United States Attorney

Dated:  March 24, 2022