IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | No. 20-45-1, 2 |
| | : | |
| ABDUR RAHIM ISLAM | : | |
| SHAHIED DAWAN | : | |

McHUGH, J.                                                                                                            July 31, 2023

### MEMORANDUM

Defendants Abdur Rahim Islam and Shahied Dawan move to dismiss Count One of the Indictment, which charges them with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). They contend that their acquittal on bribery charges in Phase I of this bifurcated case renders any consideration of that acquitted conduct as a predicate act for the RICO charge impermissible under principles of collateral estoppel. They further contend that the Government committed legal error in the Indictment by identifying the purported racketeering enterprise as the victim of some of the criminal acts charged. Because of ambiguity as to the basis for the jury's acquittal, and the broad contours of the RICO statue, I am constrained to reject Defendants' collateral estoppel argument. But Defendants are correct that certain alleged acts of embezzlement cannot serve as predicate offenses on the RICO charge. I will therefore grant the motion in part and deny it in part, deferring further ruling on the proper scope of other evidence until closer to trial.[1]

---

[1] I reject the Government's contention that the filing of an interlocutory appeal on grounds of double jeopardy has deprived this court of jurisdiction to address other pending motions. Having resolved this motion, the Court will next turn its attention to whether the appeal should be considered frivolous, and the parties are given leave to file supplemental memoranda addressing that issue under *United States v. Leppo*, 634 F.2d 101, 103 (3d Cir. 1980) by August 9, 2023.

I.    **Relevant Background**

The history of this criminal prosecution is complex and extensive, including two bifurcated trials. I review only the facts necessary for resolution of this motion.

In January 2020, the Government indicted Mr. Islam and Mr. Dawan, alongside co-Defendants Councilman Kenyatta Johnson, a Philadelphia City Councilmember, and his wife Ms. Dawn Chavous, charging them with various financial crimes and political corruption. According to the Indictment, Defendants Islam and Dawan ran Universal Community Homes (UCH) and Universal Education Companies (UEC), entities dedicated to real estate development and to operations for charter schools respectively and collectively known as "Universal Companies." Counts One through Eight and Eleven through Twenty-Two of the Indictment focus on crimes Islam and Dawan allegedly committed while running these organizations, including RICO conspiracy, bribery, tax evasion, and embezzlement. Counts Nine and Ten concern all four Defendants and allege that Councilman Johnson exercised a traditional power known as councilmanic prerogative to benefit Islam and Dawan in two real estate ventures. Islam and Dawan allegedly bribed Johnson to do so through his wife, Chavous, by hiring her as a consultant for Universal Companies.

On January 29, 2021, I granted a motion for severance filed by Defendants Johnson and Chavous, holding that Counts Nine and Ten would be severed and tried separately from the remaining counts against only Islam and Dawan. ECF 76 and 77. Instead of holding separate trials, I granted the request of the Government, one joined by Islam and Dawan, not to have separate trials but rather to proceed with a bifurcated trial, focusing first on the alleged Johnson-Chavous bribery scheme while limiting evidence bearing on the remaining charges.

Trial commenced on September 28, 2022.[2]  In accordance with my ruling, Counts Nine and Ten were tried first.  After hearing five weeks of evidence regarding the alleged bribery scheme and deliberating for four days, the jury acquitted all four Defendants of these charges.

The second phase of trial began the next day, during which the Government sought to prove the remaining charges against only Islam and Dawan.  Included in those charges is Count One, which alleges that Islam and Dawan conspired to commit acts of racketeering in violation of the RICO statute.  *See* 18 U.S.C. § 1962(d); ECF 1 at ¶¶ 1-25.  The Indictment details the "manner and means" of that alleged conspiracy, listing predicate acts like the Johnson-Chavous bribery scheme, a second alleged bribery scheme involving an official on the Milwaukee Board of School Directors, and embezzlement of Universal Companies' funds.  After just a few days, Phase II ended in a mistrial when the twelfth juror contracted COVID-19 and Defendants refused to proceed with an eleven-person jury under Federal Rule of Criminal Procedure 23(b)(2)(B).[3]  About one month later, Defendants filed this motion seeking to dismiss Count One of the Indictment.  Trial is scheduled to commence on October 2, 2023.

## II.     Legal Standard

"A district court's review of the facts set forth in the indictment is limited to determining whether, assuming all of those facts as true, a jury could find that the defendant committed the offense for which he was charged." *United States v. Huet,* 665 F.3d 588, 595-96 (3d Cir. 2012). In addition to setting forth the elements of the offense, an indictment must set forth "sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy."

---

[2] When this case was first tried in March 2022, the jury hung and never reached the second phase of the bifurcated trial.

[3] Trial commenced with five alternate jurors. One was excused for family obligations; one for illness; one for religious beliefs impeding the ability to deliberate; and two because of deaths in their families.

3

*United States v. John-Baptiste*, 747 F.3d 186, 196 (3d Cir. 2014) (citations and internal quotations omitted).

### III. Discussion

#### A. Defendants' motion is timely.

The Government argues that Defendants' motion to dismiss is untimely, noting under the Case Management Order that all motions to dismiss were due on September 14, 2020, before this case was initially tried. ECF 36. I disagree. After being acquitted on the bribery scheme contained in Counts Nine and Ten, Islam and Dawan's view of the case reasonably changed. It is therefore appropriate for the defense to revisit the remainder of the charges following the jury's acquittal. Moreover, Defendants filed their motion just over one month after trial ended. Consequently, I find their arguments timely and will proceed to address the merits of their motion.

#### B. The Government is not collaterally estopped from referencing the acquitted conduct as a predicate act of racketeering in the retrial.

The Double Jeopardy Clause of the Fifth Amendment incorporates the doctrine of collateral estoppel. *See Ashe v. Swenson*, 397 U.S. 436, 442-45 (1970); *Dowling v. United States*, 493 U.S. 342, 347 (3d Cir. 1990). These principles "bar the relitigation of an issue actually decided in a defendant's favor by a valid and final judgment." *United States v. Merlino*, 310 F.3d 137, 141 (3d Cir. 2002) (citing *Ashe*, 391 U.S. at 443).

To establish estoppel in a criminal case, a defendant must: (1) identify the specific factual issue he seeks to preclude; (2) show that the jury in the first trial "necessarily decided" that issue; and (3) establish that the issue is an "ultimate issue" in the retrial and not a collateral matter. *See, e.g.*, *Dowling*, 493 U.S. at 350-51; *United States v. Rigas*, 605 F.3d 194, 217-18 (3d Cir. 2010); *United States v. Console*, 13 F.3d 641, 664-65 (3d Cir. 1993); *Yeager v. United States*, 557 U.S. 110, 119 (2009). To determine whether an issue has been "necessarily decided," courts examine

4

the record of the prior proceeding and evaluate "whether a rational jury could have grounded its verdict upon an issue *other than* that which the defendant seeks to foreclose from consideration." *Yeager*, 557 U.S. at 120 (quoting *Ashe*, 397 U.S. at 444) (emphasis added). Although it may seem "impossible to determine with any precision upon what basis the jury reached a verdict in a criminal case," *Rigas*, 605 F.3d at 218, the standard is not applied with a "hypertechnical and archaic approach . . . but with realism and rationality." *Ashe*, 397 U.S. at 444. Further, to determine whether an issue is the "ultimate issue" in the retrial, courts consider whether the issue is one that must be proved beyond a reasonable doubt in both proceedings. *See Dowling*, 493 U.S. at 348-49.

My analysis begins by considering the specific issue decided in the prior acquittal. Unsurprisingly, the parties characterize the acquittal in different terms. Defendants argue that, in acquitting all four Defendants, the jury necessarily decided that the Government failed to prove beyond a reasonable doubt that any one of them "devised a scheme to commit 'bribery.'" *See* ECF 515. The Government argues, alternatively, that the jury only decided that the four Defendants together did not agree to participate in a bribery scheme involving a *quid pro quo*, leaving open the possibility that such a scheme was intended by Islam and Dawan.[4]

---

[4] The government further explained its position: "[T]he crux of the acquittal, what it essentially means is that the jury found that we failed to prove beyond a reasonable doubt that there was an agreement between these Defendants on the one hand and Kenyatta Johnson on the other hand. That there was *this quid pro quo*. We give you money in the form of the payments to Dawn Chavous, you give us official acts. The RICO conspiracy charge does not hinge on an agreement between Kenyatta Johnson and anybody. It hinges on an agreement between these two defendants. It hinges on an agreement between Mr. Islam and Mr. Dawan to participate in an enterprise through the pattern of racketeering activity that can include the manners and means set forth in the indictment. And it can be any of those manner and means. It could be the – the manners and means relating to the Milwaukee bribery scheme, the embezzlement from Universal, the – the fabrication of documents, the conspiracy between the two of them to bribe Kenyatta Johnson." Tr. June 28, 17:19-18:13, ECF 518.

5

Neither view is persuasive. First, as to the Government, the jury instructions made clear that the crime of honest services wire fraud does not depend on an agreement between all involved parties – it depends instead on what each individual defendant *intended* when that person provided or accepted payment. Indeed, the model jury instructions detail the elements of honest services wire fraud as follows:

> (1) the defendant *knowingly devised a scheme to defraud* the public of their right to honest services through bribery, or willfully participated in such a scheme with knowledge of its fraudulent nature;
>
> (2) the defendant *acted with intent to defraud*; and
>
> (3) in advancing, furthering, or carrying out the scheme, the defendant transmitted a writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio or television communication in interstate commerce.

*See* 18 U.S.C. § 1343, 1346 (emphasis added). In this case, the parties stipulated to a wire transmission between the parties, and there was no dispute that Islam and Dawan paid Chavous for a consulting contract. *See* ECF 415. Necessarily, the jury did not base its acquittal on the government's failure to establish the third element of the crime. And, upon review of the first two elements, I see no requirement that all four defendants must *agree* to a *quid pro quo* for there to be a conviction of any individual. The section of the jury instructions defining *quid pro quo* makes clear that it would have been enough to convict Islam and Dawan if they "provided things of value to defendant Johnson *intending* Johnson to take favorable official action that he would not otherwise take," Tr. Oct. 27, 39:1-4, ECF 455, regardless of whether Johnson or Chavous viewed such payments as tendered in exchange for official acts.[5]

---

[5] A hypothetical helps illustrate this point. Imagine law enforcement becomes suspicious that a businessperson intends to bribe a public official. Law enforcement may approach that public official and

But the Government's limited view of the issue does not end the inquiry, because the hazy contours of honest services wire fraud and the complex instructions that the jury was asked to follow make it difficult to discern the precise basis for an acquittal. Defendants are correct that the jury was instructed that "an individual who pays a bribe or a kickback to a public official with the intent to influence that official's performance of an act or acts has also committed the crime of honest services fraud." *Id.* at 36:19-22. But it does not follow that the jury necessarily based an acquittal on lack of criminal intent. That is so because the jury instructions also required that Islam and Dawan provided something of value "intending Johnson to take favorable action that *he would not otherwise take*." *Id.* at 39:1-4. Elsewhere, the jury was instructed that it must find that Islam and Dawan "engaged in a scheme to defraud that would *cause* defendant Johnson to violate the duty to provide honest services." *Id.* at 36:8-10 (emphasis added). Given the evidence at trial, the jury may have concluded that, considering Defendant Johnson's historic support for various Universal enterprises, any intended bribe did not have the intended effect.[6] And although the jury was instructed on mixed motives, *id.* at 43:18-45:2, the standard differs as between a public official and a citizen charged with bribery. As to Defendant Johnson, the jury was instructed that it would not be a defense that he would have taken the same action anyway, so long as the payment influenced his actions. No similar limitation existed as to Islam and Dawan. I therefore cannot rule out the possibility that the jury found corrupt intent even as it acquitted.

---

encourage them to become an informant and wear a wire during their interactions with the businessperson. If the public official agrees and does just that, the businessperson could certainly still be convicted of honest service wire fraud even if there is no intent by the cooperating official to act corruptly.

[6] In the context of honest services fraud, no Third Circuit decision I am aware of has addressed whether it is the accused bribers' personal assessment of what the official would do that the jury must decide, or whether the jury make its own independent assessment based on the evidence it has heard. Under the bribery statute, 18 U.S.C. § 201, it is the alleged briber's subjective state of mind that is relevant, *United States v. Jannotti*, 673 F.2d 578, 601 (3d Cir. 1982), but the parties here did not request instruction on this issue.

The defense position is also undercut by the differing burdens under RICO. In the retrial, the Government will seek to prove that Defendants *conspired* to violate the RICO statute.[7] *See* 18 U.S.C. § 1962(d). Under this provision, the Government need not prove any predicate acts beyond a reasonable doubt; the Government only must prove that that Defendants *agreed* to commit at least two predicate acts that fall into a pattern of racketeering. On this basis alone, many courts have held that prosecutors are not precluded from relying on acquitted conduct in subsequent conspiracy-to-violate-RICO trials.[8] *United States v. Shenberg*, 828 F. Supp. 968, 970-71 (S.D. Fla. 1993) (explaining that the government is not necessarily precluded from referencing acquitted conduct in a subsequent § 1962(d) prosecution because, even if the jury in the prior trial found defendant not guilty of bribery, "it does not necessarily mean that the defendant did not *agree* to take the money – it only indicates that the government did not prove the bribe was ever completed"); *United States v. Salerno*, 108 F.3d 730, 740-41 (7th Cir. 1997) (finding no preclusion where the government relied on acquitted conduct "to show the existence" of defendant's membership in a criminal enterprise in a subsequent trial, but where the government "was not required to prove" that the acquitted conduct actually occurred); *see also Dowling*, 493 U.S. at 348 (allowing the government to reference acquitted conduct in a subsequent conspiracy to violate RICO prosecution as 404(b) evidence); *United States v. Bailin,* 977 F.2d 270, 273 (7th Cir. 1992) (affirming that the government is precluded from relying on acquitted counts as predicate acts in

---

[7] Section 1962(d) criminalizes "any person [who] conspire[s] to violate any of the provisions of subsection (a), (b), or (c) of this section." The Indictment makes clear that the Government will seek to prove that Defendants here conspired to violate subsection (c). ECF 1 at ¶ 10. That subsection reads: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

[8] In *dicta,* the Third Circuit has mused that it would be "very difficult" for a defendant to show that an acquittal of an underlying predicate offense precluded a subsequent RICO prosecution. *Console*, 13 F.3d at 664 n.28.

a subsequent *substantive* RICO prosecution because, unlike a conspiracy-to-violate-RICO trial, the government would have to prove commission of the predicate acts beyond a reasonable doubt in both proceedings).

Here, because of the ambiguity as to the basis for the jury's verdict, I cannot conclude that the Government is necessarily precluded from referencing the alleged Johnson-Chavous bribery scheme in the upcoming trial.[9] It may, however, prove poor strategy to do so, if the defense persuades the Court that the fact of their acquittal should be admissible in the event that the Government chooses to cite acquitted conduct as a predicate act.

### C. The Government may not reference any racketeering act in which the enterprise is also the victim, including acts of embezzlement.

Defendants next argue that the Government is barred from referencing the alleged embezzlement as acts of racketeering because the enterprise of a RICO prosecution – here, Universal Companies – cannot also be the victim of that RICO conspiracy. I agree. In evaluating a civil, substantive RICO claim, the Third Circuit emphasized that an enterprise is "properly viewed as the 'vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity.'" *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 267 (3d Cir. 1995) (quoting *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 (1994)). As a result:

> [A] victim corporation "drained of its own money" by pilfering officers and employees could not reasonably be viewed as the enterprise *through* which employee persons carried out their racketeering activity. Rather, in such an instance, the proper

---

[9] I note, however, that the prospect of acquitted conduct forming the basis of a subsequent RICO prosecution is unsettling. Moreover, although it may be "very difficult" to conceive of a case where estoppel would preclude the use of acquitted conduct as a predicate act in a subsequent § 1962(d) prosecution, *Console*, 13 F.3d at 664 n.28, it is certainly not impossible. Here, for example, had the record been clearer as to what the jury necessarily decided, estoppel may well have been appropriate. In my view, *United States v. Ligambi*, 972 F. Supp. 2d 699, 705-07 (E.D. Pa. 2013), on which the Government strongly relies, paints with too broad a brush.

> enterprise would be the association of employees who are victimizing the corporation, while the victim corporation would not be the enterprise but instead the § 1962(c) claimant.

*Id.* (emphasis in original). Although *Jaguar Cars* addressed a technically distinct legal issue, "numerous district courts in this Circuit have found the Court of Appeals' reasoning persuasive and have determined the enterprise and the victim may not be same for § 1962(c) claims." *Blue Cross Blue Shield Assoc. v. GlaxoSmithKline LLC*, 417 F. Supp. 3d 531, 560-61 (E.D. Pa. 2019) (Sanchez, C.J.) (collecting cases); *United States v. Stewart*, 955 F. Supp. 385, 387 (E.D. Pa. 1997) (Bartle, J.) ("[Defendant] is correct that the enterprise and victim cannot be the same entity."); *see also Scheidler*, 510 U.S. at 259 ("By contrast, the 'enterprise' in subsection (c) connotes generally the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity.").[10]

Here, in direct conflict with this principle, the indictment identifies Universal Companies as both enterprise and victim. First, the indictment describes UCH and UEC, and identifies them collectively as "Universal Companies." ECF 1 at ¶¶ 1-3. It then classifies Universal Companies as an enterprise as defined in 18 U.S.C. § 1961(4). *Id.* But, contrary to the cautions expressed in *Jaguar Cars*, several sections in the indictment then characterize Universal, UEC, and UCH as victims of the conspiracy. For example, under the explanation for "Fraud, Hidden Income and Tax Evasion," the indictment explains:

> Between 2010 and 2016, defendant Islam *drew significant sums of money from UCH* in the form of bonuses and travel or expense reimbursements, in addition to his annual salary. Although UCH's Board of Directors (the Board) was charged with reviewing and approving UCH's financials . . . defendants Islam and Dawan used their positions . . . *to pay themselves bonuses without the approval or knowledge of the UCH Board*. Defendants Islam and Dawan paid themselves bonuses *even while Universal Companies was*

---

[10] Although these cases reference § 1962(c), they are relevant to this § 1962(d) prosecution because the Government intends to prove that Defendants conspired to violate subsection (c) of the RICO statute.

>*hemorrhaging money* due to the failed charter school expansion in Milwaukee.

*Id.* at ¶ 54 (cleaned up and emphasis added). Under the explanation for "Embezzled Income from Universal Companies," the Indictment reads: "Defendants Islam and Dawan used UCH's funds to pay Islam excessive, inflated, or outright fraudulent reimbursements for 'travel' or other purported 'business expenses,'" and "Defendants Islam and Dawan, as the chief executives of UCH, and without notice to the Board, also authorized defendant Islam to receive large sums of 'pocket money' or per diem from UCH." *Id.* at ¶¶ 56-57 (cleaned up).

In both briefing and at argument, the Government offered virtually no response to these deficiencies. I am persuaded that the Government cannot rely on these predicate acts – or any other act in which Universal is characterized as the victim – to prove its RICO conspiracy charge.

### D. There is no violation of Defendants' grand jury rights under the Fifth Amendment.

Defendants further argue for dismissal of Count One on the basis that, if the RICO count is tried without reference to some of the conduct alleged in the Indictment, their grand jury rights will be violated. I disagree.

The Grand Jury Clause states that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const., amend V. In other words, a person can only be convicted of a crime charged by the grand jury. "Accordingly, a court cannot later amend an indictment – either formally or constructively – to include new charges." *United States v. Scarfo*, 41 F.4th 136, 193 (3d Cir. 2022). An indictment is amended when the court "broaden[s] the possible bases for conviction from those which appeared in the indictment." *Id.* (quoting *United States v. McKee*, 506 F.3d 225, 229 (3d Cir. 2007)) (cleaned up); *see United States v. Miller*, 471 U.S. 130, 138-39 (1985) (citing *Stirone v.*

11

*United States*, 361 U.S. 212 (1960)) (explaining that a defendant's grand jury right is violated if "the offense proved at trial was not *fully* contained in the indictment") (emphasis in original).

But the Fifth Amendment is not violated when a conviction is based on proof of a scheme "significantly narrower and more limited" than the facts included in the relevant indictment. *Miller*, 471 U.S. at 131. Indeed, "[a]s long as the crime and elements of an offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime." *Id.* at 136. Therefore, to determine whether the Indictment in this case has been impermissibly amended, I must assess whether the changes I have set out "narrowed the indictment's charges without adding any new offenses" or broadened those charges by allowing for a possible conviction on an uncharged offense. *Id.* at 138; *Stirone*, 361 U.S. at 213.

Defendants predicated much of their argument on the assumption that the Government would be precluded from relying on the Johnson-Chavous bribery at trial. I have already rejected that argument. But even if I had not, there would still be no violation of Defendants' Fifth Amendment rights because removing such conduct only results in a *narrower* offense with fewer possible predicate acts than the one charged. The Indictment therefore "alleges more acts" than the Government may prove at trial, and cannot be found to broaden the bases for conviction. *See Scarfo*, 41 F.4th at 193 (concluding that defendant's rights were not violated when jurors were given a special interrogatory that included fewer predicate acts than those charged in the indictment because the court "narrowed . . . the possible bases for conviction"); *United States v. Tykarsky*, 446 F.3d 458, 474 (3d Cir. 2006) ("The Supreme Court has observed that a defendant's right to be tried on the charges set forth in the indictment is not impaired where the indictment alleges more acts than are necessary for conviction."); *United States v. Zauber*, 857 F.2d 137, 151 (3d Cir. 1988)

12

(same). This reasoning applies with even more force when, as I have decided above, the Johnson-Chavous bribery scheme remains a valid predicate act in the Indictment and only the embezzlement is removed. Because my ruling narrows the basis for a possible RICO conviction by merely eliminating some predicate acts, an upcoming trial on Count One will not violate Defendants' grand jury rights.

## IV. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss is granted in part and denied in part. An appropriate order follows.

/s/ Gerald Austin McHugh<br>
United States District Judge